UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

JOSE FRANK SANTOS ABREU,

        Petitioner,

    v.                                                      20-CV-372-LJV
                                                                DECISION & ORDER
WILLIAM P. BARR, U.S. Attorney
General, et al.,

        Respondents.
───────────────────────────────

Jose Frank Santos Abreu has been detained in United States Department of

Homeland Security ("DHS") custody since April 24, 2019—more than fifteen months.

Docket Item 1 at 2; Docket Item 4 at 4. On March 27, 2020, Santos Abreu filed a *pro se*

petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of

his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.

Docket Item 1. On May 22, 2020, the respondents answered the petition, Docket Item

4, and on June 12, 2020, Santos Abreu replied, Docket Item 6.

For the reasons that follow, this Court grants Santos Abreu's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with United

States Immigration and Customs Enforcement ("ICE").

Santos Abreu is a native and citizen of the Dominican Republic. Docket Item 1 at

1; Docket Item 4 at 3. He entered the United States on October 11, 2017. Docket Item

1 at 1; Docket Item 4 at 3.

On June 14, 2018, Santos Abreu was convicted in New York State Supreme Court, New York County, of conspiring to possess a controlled substance.  Docket Item 4 at 3.  On September 27, 2018, DHS served Santos Abreu with a "Notice to Appear," charging that he was subject to removal from the United States under the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537.  *Id.* at 26-28.  More specifically, DHS charged that Santos Abreu was subject to removal under § 1227(a)(2)(B)(i) for having been convicted of a controlled-substance offense and §1227(a)(1)(B) for having remained in the United States longer than permitted after admission.  *Id.* at 4.

On April 24, 2019, upon Santos Abreu's release from the custody of the New York State Department of Corrections, ICE took him into custody.  *Id.*  DHS determined that Santos Abreu would remain in detention pending removal.  *Id.* at 29.  Santos Abreu challenged his detention, but on July 1, 2019, an Immigration Judge ("IJ") denied his request for a change in custody status.  *Id.* at 38.  On August 7, 2019, the IJ also denied Santos Abreu's applications for relief from removal and ordered him removed to the Dominican Republic.  *Id.* at 31-32.

Santos Abreu appealed the IJ's decisions to the Board of Immigration Appeals ("BIA").  *Id.* at 41.  On January 24, 2020, the BIA dismissed both Santos Abreu's bond appeal and his appeal of the removal order.  *Id.* at 55-58.  Based on the BIA's final removal order, ICE issued a Warrant of Removal/Deportation on January 28, 2020.  *Id.* at 21-22.

In February 2020, Santos Abreu petitioned the United States Court of Appeals for the Second Circuit to review the BIA's final removal order and to stay his removal.  *See Santos Abreu v. Barr*, No. 20-517, Docket Items 1 (2d Cir. Feb. 10, 2020) and 12 (2d

Cir. Feb. 28, 2020).  On March 27, 2020, the Second Circuit granted Santos Abreu a

temporary stay of removal pending review of his petition.  *See Santos Abreu v. Barr*,

No. 20-517, Docket Item 23 (2d Cir. Mar. 27, 2020).  Santos Abreu's petition for review

remains pending before the Second Circuit.  Docket Item 4 at 7.

## DISCUSSION

## I.    HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus

whenever a petitioner is 'in custody in violation of the laws or treaties of the United

States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C.

§ 2241(c)(3)).  The government maintains that Santos Abreu is validly detained under 8

U.S.C. § 1226(c) as a noncitizen convicted of committing a controlled-substance

offense.  Docket Item 5 at 2.

Santos Abreu disagrees on two grounds.  First, Santos Abreu argues that his

"prolonged" detention violates his right to substantive due process under the Fifth

Amendment of the United States Constitution.  Docket Item 1 at 9-10.  Second, he

contends that his "prolonged detention . . . without a meaningful review" violates his

right to procedural due process under the Fifth Amendment of the United States

Constitution.  *Id.* at 10.[1]

---

[1]  Santos Abreu also asks this Court to stay his removal.  *See* Docket Item 1 at 9.
This Court, however, does not have jurisdiction to issue a stay of removal.  *See Rodney
v. Gonzalez*, 2006 WL 73731, at *2 (E.D.N.Y. Jan 10, 2006) ("By depriving district
courts of jurisdiction to hear cases challenging final orders of removal, Congress
necessarily deprived district courts of jurisdiction to grant stays of removal in such
cases.").  Moreover, the Second Circuit already has granted Santos Abreu a temporary

II.     **DUE PROCESS**

Santos Abreu alleges that his continued detention violates the Due Process

Clause.  *See* Docket Item 1 at 9-10.  The Fifth Amendment's Due Process Clause

forbids the federal government from depriving any "person . . . of . . . liberty . . . without

due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due

Process Clause protects individuals against two types of government action."  *United*

*States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process'

prevents the government from engaging in conduct that shocks the conscience, . . . or

interferes with rights implicit in the concept of ordered liberty."  *Id.* (citations omitted).

"When government action depriving a person of life, liberty, or property survives

substantive due process scrutiny, it must still be implemented in a fair manner."  *Id.*

"This requirement has traditionally been referred to as 'procedural' due process."  *Id.*

"Freedom from imprisonment—from government custody, detention, or other

forms of physical restraint—lies at the heart of the liberty that Clause protects."

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[G]overnment detention violates that

Clause unless the detention is ordered in a *criminal* proceeding with adequate

procedural protections . . . or, in certain special and narrow nonpunitive circumstances,

. . . where a special justification, such as harm-threatening mental illness, outweighs the

individual's constitutionally protected interest in avoiding physical restraint."  *Id.*

(emphasis in original) (citations omitted).  Other than those unique, special, and narrow

circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a

_____

stay of removal.  *See Santos Abreu v. Barr*, No. 20-517, Docket Item 23 (2d Cir. Mar.
27, 2020).

person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government."  *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[ ]."  *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens."  *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A.    Substantive Due Process

Santos Abreu argues that his detention violates his right to substantive due process.  Docket Item 1 at 9-10.  He has been in DHS custody since April 24, 2019— more than fifteen months.  Docket Item 1 at 2; Docket Item 4 at 4.  But this Court cannot say that detention that long violates due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process).  Indeed, detention under § 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the

safety of the community, *see Salerno*, 481 U.S. at 749. Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, *see id.* at 747 n.4, that time has not yet come here.

### B.   Procedural Due Process

Santos Abreu also challenges the procedural safeguards that apply to his continued detention. Docket Item 1 at 10. The Due Process Clause is not offended by the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g., id.* at 532 (Kennedy, *J.*, concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans v. Searls*, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the

government has not provided the procedural safeguards dictated by the *Mathews* factors to a [noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### 1.    Santos Abreu's Detention

"[W]hen weighing the lawfulness of continued detention of a [noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. Santos Abreu has been in DHS custody since April 24, 2019—more than fifteen months. Docket Item 1 at 2; Docket Item 4 at 4. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (collecting cases). In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[2]

---

[2] *See, e.g.*, *Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months" and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218

In *Demore*, the Supreme Court upheld the constitutionality of § 1226(c), relying on the "very limited time of . . . detention at stake" and noting that "in the majority of cases[, § 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Santos Abreu's fifteen-month detention far exceeds the four-month average cited in *Demore*.  The length of Santos Abreu's detention therefore supports his argument that his detention without an individualized bond hearing has become unreasonably prolonged.

Second, courts consider the conditions of detention.  Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of the petitioner's detention.  *Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).  "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."  *Muse*, 2018 WL 4466052, at *5.

---

(11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").

Here, the government has submitted the declaration of a deportation officer at

BFDF.  *See* Docket Item 4 at 13-19.  But the BFDF deportation officer did not offer

information about the conditions at BFDF; nor did Santos Abreu provide such

information.  Thus, this factor does not favor either party.

Third, courts consider whether the petitioner has prolonged his own detention.

The Second Circuit has found that this factor weighs against finding detention

unreasonable when a noncitizen has "substantially prolonged his stay by abusing the

processes provided to him" but not when "an immigrant . . . [has] simply made use of

the statutorily permitted appeals process."  *Hechavarria*, 891 F.3d at 56 n.6 (first quoting

*Nken v. Holder*, 556 U.S. 418, 436 (2009)).  As the Sixth Circuit has noted, "appeals

and petitions for relief are to be expected as a natural part of the process.  A

[noncitizen] who would not normally be subject to indefinite detention cannot be so

detained merely because he seeks to explore avenues of relief that the law makes

available to him."  *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in

*Hechavarria*, 891 F.3d at 56 n.6).  Indeed,

> although a [noncitizen] may be responsible for seeking relief, he is not
> responsible for the amount of time that such determinations may take.  The
> mere fact that a [noncitizen] has sought relief from deportation does not
> authorize the [government] to drag its heels indefinitely in making a
> decision.  The entire process, not merely the original deportation hearing, is
> subject to the constitutional requirement of reasonability.

*Id.*

Here, DHS charged Santos Abreu with removability on September 27, 2018, and

took him into custody on April 4, 2019.  Docket Item 4 at 3-4.  Santos Abreu promptly

applied for relief from removal before an IJ, who denied Santos Abreu's applications on

August 7, 2019.  *Id.* at 31-32.  Santos Abreu then appealed to the BIA two weeks later—

on August 21, 2019.  *Id.* at 50-52.  But the BIA did not issue its decision until January 24, 2020.  *Id.* at 55-58.

Santos Abreu promptly petitioned the Second Circuit to review the BIA's final removal order and to stay his removal.  *See Santos Abreu v. Barr*, No. 20-517, Docket Items 1 (2d Cir. Feb. 10, 2020) and 12 (2d Cir. Feb. 28, 2020).  The Second Circuit issued a temporary stay of removal on March 27, 2020.  *See Santos Abreu v. Barr*, No. 20-517, Docket Item 23 (2d Cir. Mar. 27, 2020).  On the same day, Santos Abreu filed a habeas petition in this Court.  Docket Item 1.

In no way has Santos Abreu "abus[ed] the processes provided to him."  *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436).  Indeed, he has done nothing more than promptly challenge his removal and appeal the IJ's decision to the BIA and then to the Second Circuit.  Therefore, the third factor weighs in Santos Abreu's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  This Court declines to weigh the merits of Santos Abreu's claims pending before the Second Circuit.

After balancing all these factors, this Court finds that Santos Abreu's detention has become unreasonably prolonged.  Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably-prolonged detention demands.

## 2.    The Process Due to Santos Abreu

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting

10

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).  Here, that analysis leads to the conclusion that Santos Abreu's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause."  *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Santos Abreu's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity."  *Addington v. Texas*, 441 U.S. 418, 427 (1979).  He has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint."  *Zadvydas*, 533 U.S. at 690.  Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Santos Abreu has not conceded his deportability, and the resolution of that issue remains pending before the Second Circuit.  In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability.  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest.  Santos Abreu testified that his "common law wife[,] . . . his son[,] . . . his brother-in-law[, and] . . . three siblings" all live in the United States.  *See* Docket Item 4 at 67.  Thus, if Santos Abreu

chose not to challenge his removal, he would "lose the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual." *Landon*, 459 U.S. at 34.

This Court recognizes that the government's interest in detaining Santos Abreu also may be strong.  The government contends that Santos Abreu's risk of flight and disregard for the law justify his continued detention.  Docket Item 4 at 87-90.  In fact, Santos Abreu is detained under 8 U.S.C. § 1226(c), which applies to aliens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S. Ct. at 837.  "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[3]  *Id*. at 846.  Thus, in mandating the detention of criminal aliens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community.  *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal aliens who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal aliens failed to appear for their removal hearings"[4]).  "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749.  And general concerns about the risk of flight highlight the government's

---

[3]  The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

[4]  The Court noted that this number included aliens who were released from custody *without* an individualized bond hearing.  *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these aliens on bond, it is not clear that *all* of the aliens released were in fact given individualized bond hearings." (emphasis in original)).

compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty*, 943 F.2d at 211.

This Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation to Santos Abreu's liberty interests.  Section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether he is, in fact, a danger or a flight risk. *Jennings*, 138 S. Ct. at 846.  Now that Santos Abreu's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation omitted).  When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest. *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)).  That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the

safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the noncitizen will appear for any future proceeding.[5]  This requires consideration of less-restrictive alternatives to detention.  *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less[-]restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

Santos Abreu's § 1226(c) detention has been unreasonably prolonged.  Because § 1226(c) does not require an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him, it is unconstitutional as applied to him.  As such, his continued detention violates the Due Process Clause.

Santos Abreu must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decision maker that Santos Abreu's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decision maker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond

---

[5]  As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

## III.   LIMIT ON TRANSFERRING SANTOS ABREU

Santos Abreu also asks this Court to order the respondents and their "agents not to remove [him] from the jurisdiction of this Court during the duration of the consideration of this petition."  Docket Item 1 at 11.

Now that this Court has conditionally granted Santos Abreu's writ, his jurisdictional concerns are not unreasonable.  After all, "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them and order sanctions accordingly."  *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368 n.5 (6th Cir. 2006)).  But "[it] is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."  *See Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985).  In other words, regardless of where Santos Abreu is housed, this Court retains jurisdiction over his habeas petition.  So there is no need to interfere with DHS's authority to "arrange for appropriate places of detention" under 8 U.S.C. § 1231(g)(1).

## <u>ORDER</u>

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Santos Abreu from detention unless a neutral

decision-maker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Santos Abreu's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests.  In other words, the decision maker must find that no condition or combination of conditions of release can reasonably ensure Santos Abreu's appearance and the safety of the community— that is, even with conditions, Santos Abreu presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a written copy of the IJ's decision.

SO ORDERED.

Dated:      August 5, 2020
            Buffalo, New York


                                  _/s/ Lawrence J. Vilardo_
                                  LAWRENCE J. VILARDO
                                  UNITED STATES DISTRICT JUDGE

16